UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CONVIRON CONTROLLED ENVIRONMENTS,
INC.,

                      Plaintiff,

-against-

ARCH INSURANCE COMPANY,

                      Defendant.
----------------------------------------------------------------x

**MEMORANDUM OF DECISION AND ORDER**
14-cv-2030(ADS)(SIL)

**APPEARANCES:**

**Forchelli, Curto, Deegan, Schwartz, Mineo & Terrana, LLP**
*Attorneys for the Plaintiff*
333 Earle Ovington Boulevard, Suite 1010
Uniondale, NY 11553
    By:    Joseph P. Asselta, Esq.
            Raymond A. Castronovo, Esq., Of Counsel

**Steven A. Berkowitz & Associates, P.C.**
*Attorneys for the Defendant*
One Greentree Centre, Suite 201
Martlton, NJ 08053
    By:    Ira E. Dorfman, Esq., Of Counsel

**SPATT, District Judge:**

On March 31, 2014, the Plaintiff Conviron Controlled Environments, Inc. ("Conviron" or the "Plaintiff") commenced this action against the Defendant Arch Insurance Company ("Arch" or the "Defendant"), seeking to recover amounts allegedly due under a labor and material payment bond.

Presently before the Court is a motion by Conviron, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56, for partial summary judgment.

1

## I. Background

Unless otherwise noted, the following facts are undisputed and construed in the light most favorable to the Defendant.

### A. The Prime Contract

On or about December 9, 2010, the State University Construction Fund (the "Owner") entered into a contract (the "Prime Contract") with an entity known as Framan Mechanical, Inc. ("Framan") for certain construction work to be performed at the State University of New York at Stony Brook, namely, a project called "Mechanical Systems Upgrade – Life Sciences Building" (the "Project"). A copy of the Prime Contract is in the record as Exhibit "10" to the May 26, 2015 Declaration of Douglas Froese (the "Froese Decl.").

Relevant here, the Prime Contract contains the following provision:

> After the completion of all the work [Framan] shall give written notice to the [Owner] and the Consultant that all the work is ready for inspection and final acceptance. The [Owner] and the Consultant shall promptly make such inspection and, if they shall determine that all the work has been satisfactorily completed, the [Owner] shall thereupon by written notice advise [Framan] that it accepts such work.

Froese Decl., Ex. "10," at § 2.23(3).

Further, pursuant to the terms of the Prime Contract, Framan and Arch – as principal and surety, respectively – issued a Labor and Material Bond (the "Bond"), which bound them, jointly and severally, to promptly pay all "monies due to all persons furnishing [Framan] or any subcontractor of [Framan] with labor or materials in the prosecution of the work provided in [the Prime] Contract." See Froese Decl., Ex. "5".

B.  **The Subcontract**

On or about January 18, 2011, Framan entered into a subcontract (the "Subcontract") with Conviron for the installation of ten so-called plant growth rooms and an associated central management system at the Project ("Conviron's Scope of Work") for the sum of $1.2 Million.  A copy of the Subcontract is in the record as Exhibit "7" to the Froese Declaration.

It is undisputed that, on an unspecified date, the Subcontract amount was increased by change orders to $1,202,950.

The Subcontract contains the following relevant provisions:

**5.2.2 RETAINAGE/SECURITY.**  The rate of retainage shall be 10% of the completed Subcontractor's Work as determined by the Schedule of Values.  This retainage rate shall apply even where retainage is being withheld from the Contractor by the Owner at a lower rate.  Retainage will be released as part of Final Payment to the Subcontractor.

*   *   *

**5.3.3 TIME OF PAYMENT.**  Subject to the provisions of Article 5.2.5, final payment of the balance due of the contract price shall be made to the Subcontractor:
(a) upon receipt of the Owner's waiver of all claims related to the Subcontractor's Work except for unsettled liens, unknown defective work, and non-compliance with the Contract Documents or warranties; and
(b) within twenty (20) days after receipt by the Contractor of final payment from the Owner for such Subcontractor's Work.

*   *   *

**5.4   PAYMENTS WITHHELD.**  Contractor reserves the right to withhold from Subcontractor's progress or final payments an amount sufficient in Contractor's judgment to compensate it for any direct or indirect loss or damage including attorney's fees where there is reasonable evidence or proof that: . . .

3

(f) Subcontractor has failed to perform per the terms and conditions of this Agreement and/or the Contract Documents;

(g) there exist reasons for which the Owner may withhold payment from Contractor under the Contract Documents regardless of whether or not the Owner actually withheld payment from Contractor; . . .

(i) other reasons exist which the Contractor, in its sole discretion, deem[s] to justify withholding payments.

\* \* \*

**7.1 OBLIGATIONS DERIVATIVE.** The Subcontractor binds itself to the Contractor under this Agreement in the same manner as the Contractor is bound to the Owner under the Contract Documents, except as expressly modified by this Agreement. The Subcontractor hereby agrees to and does hereby hold the Contractor harmless by reason of any liability which the Contractor may incur to the Owner and/or third persons, or by reason of any loss or damage which the Contractor may suffer on account of the operations of the Subcontractor, or by reason of the failure of the Subcontractor to follow and completely carry out all of the terms of the Contract Documents to the extent of the work to be performed by the Subcontractor under this Agreement.

\* \* \*

**7.10 WAIVER OF LIENS.** To the fullest extent permitted by law, the Subcontractor covenants and agrees that it will not file any mechanics' liens or claims against the Project, or the Property, or any part thereof or against any improvements thereon, or against any monies due or to become due from the Owner to the Contractor or from the Contractor to the Subcontractor, on account of any work, labor, materials, services, equipment, or other items furnished in connection with the Work. To the fullest extent permitted by law, Subcontractor does hereby expressly waive, release, and relinquish all rights to file or maintain such liens and claims and agrees further that this waiver shall be an independent covenant, and shall apply as well to work, labor, and services performed and materials, equipment, and other items furnished under any change order or other agreement for extra or additional work in connection with the Project. . . .

<u>Id.</u>

## C. The Alleged Completion of Conviron's Scope of Work

In their responses to the Plaintiff's Request for Admissions (the "Arch Responses"), Arch expressly admits that all work under the Subcontract has been completed. See Froese Decl., Ex. "6".

Nevertheless, the parties dispute whether the Conviron Scope of Work has been accepted and approved by the Owner, so that payment of the outstanding Subcontract balance would be due. In this regard, Arch relies upon an October 10, 2012 letter from Framan to the Owner, entitled "Completion of Project—North MER Phase" which states, in pertinent part, that "the captioned project phase has been completed in accordance with the Contract Documents and is ready for acceptance and occupancy." See Exhibit "G" to the June 29, 2015 Affidavit of John Manginelli (the "Manginelli Aff.").

Subsequently, on December 5, 2012 and April 22, 2013, identical letters were written from Framan to the Owner concerning the "East MER Phase" and "West MER Phase," respectively. See id., at Ex. "H" & "I." The Court notes that the record is unclear as to the meaning of the various "phases" of Conviron's Scope of Work referenced in these letters.

In any event, on October 30, 2013, the Owner sent a series of three letters to Framan stating that, following inspections, the North, East, and West MER Phases of Conviron's Scope of Work had been accepted, subject to a final punch list. See id., at Ex. "J."

However, on September 24, 2013, Framan sent a letter to the owner, entitled "Completion of Project—Entire Project," which states, in pertinent part, that "the captioned project phase has been completed in accordance with the Contract Documents and is ready for acceptance and occupancy." Id., Ex. "K." According to Framan's President, John Manginelli, to date, Framan has not received written acceptance of the entire project from the Owner, as is required under the Prime Contract before payment to Conviron is due. See Manginelli Aff. ¶ 27.

In support of its motion, Conviron relies upon a February 8, 2013 Certificate of Acceptance, which is signed by one Curtis Casey, an agent of the Owner. See Froese Decl., Ex. "8." In pertinent part, the Certificate of Acceptance "certif[ies] that the installation and start-up of the equipment supplied by Conviron has been completed" and goes on to identify the ten plant growth rooms set forth in the Subcontract. Further, on July 23, 2013, Manginelli communicated by e-mail with an individual named Anthony Delgado, whose role in the Project is unspecified, regarding the status of Conviron's Scope of Work. Manginelli instructed Delgado to "[p]lease confirm that 100% of the punch list items have been completed by Conviron," to which Delgado responded, "yes, Conviron is 100% complete, which was reflected on the last Framan Requisition. Any minor issues that remain or arise will be addressed under the warranty policy directly with Conviron." See id.

**D. The Mechanic's Lien**

On or about September 10, 2013, Conviron filed a mechanic's lien against the Project in the amount of $179,689.87. See Manginelli Aff., Ex. "E."

6

On or about September 12, 2013, approximately two days later, Manginelli wrote an e-mail to counsel for Conviron demanding that the lien be removed. See id., at Ex. "F." However, Conviron did not comply with this demand. See id. ¶ 21.

**E.    The Alleged Undisputed Balance**

It is undisputed that Framan has paid Conviron $1,038,859.47 toward the Subcontract sum.

It is also undisputed that Framan is claiming additional backcharges in the amount of $36,898.54 to be deducted from the remaining amounts due Conviron under the Subcontact, the merits of which Conviron is challenging in this lawsuit.

Nonetheless, subtracting these amounts from the $1,202,950 adjusted Subcontract price, Conviron contends that there is an undisputed outstanding balance presently owed in the amount of $126,831.99 (the "Alleged Undisputed Balance").

Arch denies that it has received payment from the Owner for Conviron's Scope of Work. In his opposing affidavit, Manginelli states that, to date, Framan has "not received final payment from the Owner and/or full and final payment from the Owner for Conviron's labor, materials, equipment and services." See Manginelli Aff. ¶ 28.

However, this statement by Manginelli is contrary to other evidence in the record. In particular, a July 29, 2014 payment application by Framan to the Owner demonstrates that, as of that date, Conviron's Scope of Work was 100% complete and that Framan had received full payment for that portion of the Project. See

7

Froese Decl., Ex. "12." In addition, Response No. 9 of the Arch Responses admits that "Framan has received payment from the Owner of a portion of the Conviron Subcontract retainage." See id., at Ex. "6".

**F.  This Motion**

Based on the allegations outlined above, the Plaintiff commenced this action seeking to recover the sum of $179,689.31 allegedly due under the Bond, together with interest and attorneys' fees pursuant to New York State Finance Law § 137. By the instant motion, Conviron seeks partial summary judgment with respect to the Alleged Undisputed Balance of $126,831.99.

Arch opposed the relief sought on the following grounds: (i) Conviron's Scope of Work has not been accepted by the Owner and Framan; (ii) Framan has not received full payment from the Owner for Conviron's Scope of Work; (iii) Framan does not know whether, and in what amount, liquidated damages will be assessed against Conviron by the Owner and/or Framan; and (iv) Conviron breached the Subcontract by filing a mechanic's lien against the Project.

## II.  Discussion

**A.  The Applicable Legal Standards**

**1.  The Standard for Summary Judgment under Fed. R. Civ. P. 56**

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "The Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving

8

party.'" Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc., 150 F.3d 132, 137 (2d Cir. 1998) (quoting Garza v. Marine Transp. Lines, Inc., 861 F.2d 23, 26 (2dCir. 1998)).

"'[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

### 2. The Standard for Actions on a Payment Bond under New York Law

Although Arch attempts to frame the issue presented in this motion as "a simple question of contract interpretation," see Def. Memo of Law at 13, it is clear to the Court that the statutory scheme set forth in the New York State Finance Law is controlling.

In particular, "[s]tate Finance Law § 137 provides protection to the trade contractors and tradespeople who supply labor and materials to a public works project by mandating payment bonds for all public works projects." Bricklayers Ins. & Welfare Fund v. Speranza Brickwork, Inc., 13-cv-5204, 2015 U.S. Dist. LEXIS 44819, at *11 (E.D.N.Y. Mar. 31, 2015) (citing N.Y. State Fin. L. § 137). "Specifically, Section 137 provides that, in connection with any contract involving construction of a public improvement, each contractor is required to post a 'bond guaranteeing prompt payment of moneys due to all persons furnishing labor or

9

materials to the contractor or any subcontractors in the prosecution of the work provided for in such contract.'" Id. at *11-*12 (quoting N.Y. State Fin. L. § 137(1)).

In this case, the Bond specifically states that it "shall be enforceable in accordance with the terms and provisions of Section 137 of the State Finance Law." See Froese Decl., Ex. "5." However, even if did not so provide, "'[a] bond on a public improvement project . . . is deemed issued pursuant to Section 137 and is subject to its provisions even where . . . it does not specifically refer to the State Finance Law.'" Travelers Cas. & Sur. Co. v. Dormitory Auth., 735 F. Supp. 2d 42, 86 (S.D.N.Y. 2010) (quoting Morin v. Empiyah & Co., LLC, 389 F. Supp. 2d 506, 512 n.7 (S.D.N.Y. 2005)).

Relevant here, State Finance Law § 137 "provides a right of action to subcontractors and suppliers on public improvement projects who are not promptly paid by the hiring contractor":

> Every person who has furnished labor or material, to the contractor or to a subcontractor of the contractor, in the prosecution of the work provided for in the contract and who has not been paid in full therefor before the expiration of a period of ninety days on which the last of the labor was performed or material was furnished by him for which the claim is made, shall have the right to sue on such payment bond in his own name for the amount, or the balance thereof, unpaid at the time of commencement of the action. . . .

Travelers, 735 F. Supp. 2d at 86 (quoting N.Y. State Fin. L. § 137(3)).

**B. As to Whether Summary Judgment is Appropriate as to the Alleged Unpaid Balance**

As noted above, Arch relies upon various contractual provisions for the contention that Conviron is not entitled to the Subcontract balance at this time. In

10

particular, Arch asserts that final payment is not due to Conviron unless and until: (i) the Owner gives written notice that it accepts Conviron's Scope of Work; (ii) Framan receives a waiver from the Owner of all claims related to the Subcontractor's Work; and (iii) Framan receives from the Owner final payment for Conviron's Scope of Work. Arch appears to contend that these provisions create conditions precedent to Conviron's entitlement to payment under the Subcontract, regardless of the language contained in the Bond.

### 1. As to Whether the Subcontract is Incorporated into the Payment Bond

Arch contends that the Bond incorporates all of the substantive terms of the Subcontract, so that any defenses to payment rooted in the Subcontract may be asserted in this litigation to deny payment under the Bond. The Court does not agree. The Bond specifically acknowledges only the Prime Contract, and states that the Prime Contract "is annexed to and hereby made a part of this Bond as though herein set forth in full." However, there is no similar language expressly incorporating the Subcontract. Thus, "[a]s a result, the subcontract[ ] (and any conditions precedent to payment contained in [it]) [is] not incorporated into the bond[.]" Gen. Accident Ins. Co. of Am. v. Merritt-Meridian Constr. Corp., 975 F. Supp. 511, 517 (S.D.N.Y. 1997) (finding that, "while the payment bonds expressly incorporate the prime contract with the owner by reference, there is no similar language incorporating the subcontract" and, therefore, finding that the language of the subcontracts did not provide grounds for defeating summary judgment).

This Court is persuaded by the reasoning in the <u>Merritt-Meridian</u> decision that, "[i]f the parties had clearly and unambiguously expressed an intention in the payment bond that no subcontractor should have a right to sue on the bond until some condition precedent contained in the subcontract had been met, then perhaps [Arch] would have a defense." <u>Id.</u> (citing <u>Schuler-Hass Electric Corp. v. Aetna Cas. & Sur. Co.</u>, 49 A.D.2d 60, 371 N.Y.S.2d 207 (4th Dep't 1975), <u>aff'd</u>, 40 N.Y.2d 883, 389 N.Y.S.2d 348, 357 N.E.2d 1003 (1976)). However, similar to <u>Merritt-Meridian</u>, no such intention having been shown or expressed in this case, the Court finds that Arch may not defeat summary judgment by relying on provisions of the Subcontract.

**2. As to Whether Grounds Exist in the Prime Contract for Withholding Payment to Conviron**

Having held that the Bond does not expressly incorporate any of the conditions of payment set forth in the Subcontract, the Court now turns to whether the Prime Contract contains grounds sufficient to raise a genuine issue of material fact concerning Conviron's entitlement to the Alleged Undisputed Balance.

In this regard, Arch points only to Article 2.23(1) of the Prime Contract, which states that, "[a]fter the completion of all the work [Framan] shall give written notice to the [Owner] and the Consultant that all the work is ready for inspection and final acceptance. The [Owner] and the Consultant shall promptly make such inspection and, if they shall determine that all the work has been satisfactorily completed, the [Owner] shall thereupon by written notice advise [Framan] that it accepts such work."

12

In the Court's view, under the authority of Merritt-Meridian, this provision is insufficient to defeat summary judgment. As the court in that case explained:

> Merritt contends that the subcontractors' claims for payment were not due and liquidated because the "condition precedent" of owner acceptance and payment for the work had not been met. However, the owner acceptance and payment provision does not create a condition precedent to payment of the subcontractors, but rather establishes a time for payment. The provision at issue here provides that final payment would not be made until thirty days after the owner accepted the subcontractor's work "as evidenced by the Owner's making final payment to the Contractor under the Prime Contract." In Schuler-Haas, the subcontract similarly provided that the general contractor was to make full payment to the subcontractor "when full payment for this subcontract work is received (by the general contractor) from the Owner." 371 N.Y.S.2d at 209. The Appellate Division held that this provision merely fixed the time when payment was due and did not establish a condition precedent to payment. 371 N.Y.S.2d at 211.

Merritt-Meridian, 975 F. Supp. at 518.

The Court finds this reasoning to be applicable here. Federal courts within this Circuit have recognized that such contractual clauses, which merely fix the time for payment to a subcontractor, are "construed as allowing the general contractor to postpone payment to the subcontractor only for a *reasonable period of time* after the completion of the subcontract work." Nouveau Indus. v. Liberty Mut. Ins. Co., 08-cv-10408, 2011 U.S. Dist. LEXIS 101266, at *25-*26 (S.D.N.Y. Sept. 7, 2011) (collecting cases) (emphasis supplied).

Applying these principles, the Court finds that the Prime Contract's requirement that payment to Conviron be conditioned upon written acceptance by the Owner is not a condition precedent to payment under the Bond. If anything, this requirement fixes the time for payment, which, as noted above, only works to

postpone such payment "for a reasonable period of time after the completion of the subcontract work."

In this regard, the Court reiterates that the Prime Contract states, in relevant part, that after receiving notice from Framan that the work on the Project is ready for inspection and final acceptance, "[t]he [Owner] and the Consultant shall *promptly make such inspection* and, if they shall determine that all the work has been satisfactorily completed, the [Owner] shall thereupon by written notice advise [Framan] that it accepts such work." Despite this clear requirement; and despite the undisputed fact that Framan sent the required written notice of completion on September 24, 2013, the Owner has failed for more than two years to "promptly" inspect and accept the work on the Project. Accordingly, Arch may not now rely on this contract language as a justification for withholding Conviron's payment. To hold otherwise would allow the Owner to delay its own performance under the Prime Contract indefinitely, to the substantial detriment of subcontractors, like Conviron, whose work the parties largely agree is complete. Indeed, despite the Owner's unwillingness to issue a formal acceptance of Conviron's Scope of Work, the record is clear that both the Owner and Framan have acknowledged that such work is, in fact, complete.

Under these circumstances, the mere existence of an acceptance clause in the Prime Contract is insufficient to create an issue of fact where none otherwise exists. Further, the Court's reasoning in this regard applies with equal force to both of the individual Subcontract provisions relied upon by Arch, namely, those provisions

conditioning payment on (i) Framan's receipt of a waiver from the Owner of all claims related to Conviron's Scope of Work; and (ii) Framan's receipt of final payment from the Owner. Thus, for substantially the same reasons outlined above, the Court notes that, even if the provisions of the Subcontract had been expressly incorporated by reference into the Bond, summary judgment in Conviron's favor would still be appropriate.

Accordingly, the Plaintiff's motion for partial summary judgment on the Alleged Unpaid Balance due under the Bond is granted. In addition, Conviron is entitled to prejudgment interest on the Alleged Undisputed Balance, accruing at the statutory rate of 9% per annum, see CPLR 5004, from September 17, 2013 – namely, the date on which Conviron a made written claim to Arch under the Bond, see Froese Decl., Ex. "9" – to the date that partial judgment is entered.

### 3. As to Arch's Remaining Contentions

Arch also asserts two additional bases for defeating summary judgment, namely, that it is entitled to withhold Conviron's payment because: (i) liquidated damages may potentially be assessed against Conviron in an amount that is presently unknown; and (ii) Conviron breached the Subcontract by filing a mechanic's lien. As discussed more fully below, the Court finds both of these contentions to be unavailing.

First, the Court notes that there is no evidence that any liquidated damages have been assessed, which would offset or reduce the amounts otherwise owed to Conviron. Nor is there evidence that Conviron delayed the project or otherwise

engaged in conduct that would give rise to such damages. In the Court's view, this remote possibility is too speculative to defeat summary judgment at this time.

Second, to the extent Arch relies upon a provision of the Subcontract purporting to waive Conviron's right to file a mechanic's lien against the Project, its position is untenable. In the Court's view, such "Waiver of Liens" provisions are unenforceable, as a matter of law. See N.Y. Lien Law § 34 ("[A]ny contract, agreement or understanding whereby the right to file or enforce any lien created under article is waived, shall be void as against public policy and wholly unenforceable"); see also Berit Realty, LLC v. Vortex Grp., Inc., Index No. 117233/2007, 2009 N.Y. Misc. LEXIS 5387, at 816-817 (Sup. Ct. N.Y. Cnty. July 24, 2009) (noting that Lien Law § 34 "precludes an owner of a project from requiring a contractor to waive its right to file a mechanic's lien as a precondition for entering in to a construction contract before any work is performed").

Accordingly, neither of these contentions alters the Court's reasoning that partial summary judgment is appropriate as to the Alleged Unpaid Balance.

**C.  As to Conviron's Application for an Award of Attorneys' Fees**

Under New York State Finance Law § 137:

In any action on a payment bond furnished pursuant to this section, . . . the court may determine and award reasonable attorneys' fee to either party to such action when, upon reviewing the entire record, it appears that either the original claim or the defense interposed to such claim is without substantial basis in fact or law.

N.Y. State Fin. L. § 137(4)(c).

The Plaintiff contends that it is entitled to reasonable attorneys' fees under this provision because the defenses asserted by Arch to its payment obligations under the Bond are without substantial basis in fact or law. The Court disagrees.

Although ultimately unsuccessful, this Court is not of the view that Arch's position is so clearly meritless as to rise to the level contemplated by the State Finance Law. See, e.g., Exp. Dev. Can. v. Elec. Apparatus & Power, L.L.C., 03-cv-2063, 2008 U.S. Dist. LEXIS 93097, at *53 (S.D.N.Y. Nov. 14, 2008); Cleveland Wrecking Co. v. Nova Cas. Co., 00-cv-1003E, 2001 U.S. Dist. LEXIS 24870, at *16 (W.D.N.Y. Nov. 21, 2001).

### III. Conclusion

Based on the foregoing, the Court grants in part and denies in part the Plaintiff's motion for partial summary judgment.

The Court grants the motion insofar as it seeks judgment on the Alleged Unpaid Balance of $126,831.99, and directs the Clerk of the Court to enter such judgment in Conviron's favor, together with prejudgment interest at a rate of 9% per annum, accruing from September 17, 2013, to the date that judgment is entered.

The Court denies the motion by Conviron insofar as it seeks an award of attorneys' fees under Section 137 of the New York State Finance Law.

**SO ORDERED**

Dated: Central Islip, New York　　　*/s/ Arthur D. Spatt*
　　　　November 13, 2015　　　　　ARTHUR D. SPATT
　　　　　　　　　　　　　　　　　United States District Judge